Docket No. 101996.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MICHAEL JONES, Appellee.

*Opinion filed December 21, 2006.*

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Fitzgerald, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

After a bench trial in the circuit court of Cook County, defendant Michael Jones was convicted of the offense of possession of a controlled substance. The court sentenced him to two years' imprisonment and imposed several monetary charges on him as part of his imprisonment. The appellate court affirmed his conviction and affirmed his sentence of imprisonment, but held that one of the monetary charges assessed on defendant was unconstitutional and that several of the other charges were satisfied by a credit to which defendant was entitled because of his presentencing incarceration. No. 1–04–3117 (unpublished order under Supreme Court Rule 23). Because the appellate court's decision declared a statute of this state

unconstitutional, we granted the State an appeal as of right. 210 Ill. 2d R. 317.

BACKGROUND

Defendant does not, in a cross-appeal, challenge his conviction or his sentence of imprisonment, and thus this appeal only involves issues arising from monetary charges imposed by the circuit court on defendant. For this reason, we need not dwell long on the facts underlying defendant's conviction. We note briefly that Chicago police officers arrested defendant during a routine narcotics surveillance. The arrest occurred after the officers observed defendant throw to the ground an object, later established to contain 0.4 grams of heroin. Defendant, charged originally with one count of possession of a controlled substance with intent to deliver, was found guilty, after a bench trial, of the lesser-included offense of possession of a controlled substance.

At sentencing, defendant received a two-year sentence of imprisonment. The circuit court also imposed several charges on defendant. A form in the record lists the "fines, fees, assessments, penalties, and reimbursements" imposed by the court on defendant. They total $1,224. The following boxes are marked on the form:

"Costs and Fees

| | |
|---|---|
| Felony Complaint Filed-Clerk *** | $ 190 |
| Felony Complaint Conviction-State's Attorney *** | $ 60 |
| Preliminary Hearing-State's Attorney *** | $ 20 |
| *** | |
| State DNA ID System *** | $ 200 |
| Violent Crime Victim Assistance *** | $ 20 |
| Criminal/Traffic Conviction | |
| Surcharge-Additional Penalty *** | $ 4 |
| Automation-Clerk *** | $ 5 |
| Document Storage-Clerk *** | $ 5 |
| Court Services-Sheriff *** | $ 15 |
| *** | |

<u>Controlled Substance/ Cannabis/ Hypodermic Needles Offenses</u>

\*\*\*

| | |
|---|---|
| Assessment Controlled Substance \*\*\* | $ 500 |
| \*\*\* | |
| Crime Lab Drug Analysis-Northern \*\*\* | $ 100 |
| Trauma Fund \*\*\* | $ 100 |
| Trauma Fund Spinal Cord \*\*\* | $ 5 |
| \*\*\* | |
| TOTAL \*\*\* | $ 1224" |

On appeal, the appellate court affirmed defendant's conviction and sentence of imprisonment, but modified the costs and fees order against defendant to reflect a credit of $604 against the $4 "Criminal/Traffic Conviction Surcharge-Additional Penalty" (see 730 ILCS 5/5–9–1(c–9) (West 2004)), the $500 "Assessment Controlled Substance" (see 720 ILCS 570/411.2(a)(4) (West 2004)), and the $100 charge marked "Trauma Fund" (see 730 ILCS 5/5–9–1.1(b) (West 2004)). No. 1–04–3117 (unpublished order under Supreme Court Rule 23). The court held that these charges were all "fines" and were thus wiped out by the credit to which defendant was entitled for his presentence incarceration. See 725 ILCS 5/110–14 (West 2004). The appellate court also struck from the order the $5 charge for "Trauma Fund Spinal Cord" (see 730 ILCS 5/5–9–1.1(c) (West 2004)). This charge, the court held, violated defendant's substantive due process rights.

In its analysis the appellate court drew heavily on *People v. Rodriguez*, 362 Ill. App. 3d 44 (2005), and *People v. Fort*, 362 Ill. App. 3d 1 (2005). Decided mere weeks apart, these two decisions contain the analytical underpinning of the appellate court's analysis of all of the statutory issues raised in the instant case. Because *Rodriguez* and *Fort* were so critical to the decision of the appellate court in the instant case, we briefly summarize them.

*Rodriguez* was the first case to address a defendant's due process challenge to the $5 charge payable to the Spinal Cord Injury Paralysis Cure Research Trust Fund (the Spinal Cord Paralysis charge), imposed by section 5–9–1.1(c) of the Unified Code of Corrections (730 ILCS 5/5–9–1.1(c) (West 2004)). The court first addressed whether the charge constituted a "fine" or a "fee." *Rodriguez*, 362 Ill. App. 3d at 48-52. The court concluded that the charge was a fee, based on the plain language of the statute so labeling it. *Rodriguez*, 362 Ill. App. 3d at 51-52. The court acknowledged that the legislature was not always rigorous about labeling charges fines and fees. *Rodriguez*, 362 Ill. App. 3d at 51 (noting that same charge was labeled a "fine" in one statute and a "fee" in another). The court also considered the State's argument that the legislature intended the charge to be a fine because it was placed within article 9 of chapter V of the Unified Code of Corrections, which is entitled "Fines," and because it was imposed on only defendants who have been convicted. *Rodriguez*, 362 Ill. App. 3d at 51. However, the court noted that other charges which were clearly fees were imposed on convicted defendants under article 9. *Rodriguez*, 362 Ill. App. 3d at 51. Accordingly, the court saw no reason to look beyond the plain language of the statute, and held that the charge was a fee. *Rodriguez*, 362 Ill. App. 3d at 51-52. Because of this, the court held that it need not address "whether the use of the proceeds of a fine must bear a reasonable relationship to the offense for which the fine is imposed." *Rodriguez*, 362 Ill. App. 3d at 49.

The court proceeded to analyze the constitutionality of the charge as a fee. The court held that for purposes of rational-relation due process analysis, the offense of possession of a controlled substance bore no rational relationship to spinal cord injury or research. After reviewing this court's precedent, including *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142 (2003), *People v. Lindner*, 127 Ill. 2d 174 (1989), and *Crocker v. Finley*, 99 Ill. 2d 444 (1984), the court concluded that mere possession of a controlled substance was too remote from spinal cord injury to support requiring persons convicted of the former to fund research into the latter. The court acknowledged but rejected the State's argument that the legislature "could have found that the possession of a controlled substance is related to driving under the influence of a controlled substance and that driving

-4-

under the influence of a controlled substance causes automobile accidents, which are the primary cause of spinal cord injuries." *Rodriguez*, 362 Ill. App. 3d at 54. The court stated that although this reasoning could have supported the legislature's decision to impose a $5 fee earmarked for the Spinal Cord Paralysis fund on defendants convicted of driving under the influence of alcohol or drugs (see 730 ILCS 5/5–9–1(c–7) (West 2004)), the instant statute imposed the fee for mere possession, which does not require or involve the use of a motor vehicle, and was therefore too remote. *Rodriguez*, 362 Ill. App. 3d at 54.

Presiding Justice Quinn dissented. *Rodriguez*, 362 Ill. App. 3d at 54-55 (Quinn, P.J., dissenting). He noted that a court has a responsibility to construe a statute so as to uphold its constitutionality if it is reasonably possible to do so, and observed that the majority seemed to have implicitly admitted that section 5–9–1.1(c) would be constitutional if the $5 charge imposed therein was a fine. *Rodriguez*, 362 Ill. App. 3d at 55 (Quinn, P.J., dissenting). Justice Quinn would have found section 5–9–1.1 ambiguous, based on its location within article 9 of chapter V of the Unified Code of Corrections–entitled "Fines"–as well as the fact that the charge was imposed only on those convicted of a felony drug offense. *Rodriguez*, 362 Ill. App. 3d at 55 (Quinn, P.J., dissenting). Justice Quinn believed that the charge could reasonably be construed as a fine, and argued that the court had the obligation to so construe it. *Rodriguez*, 362 Ill. App. 3d at 55 (Quinn, P.J., dissenting).

*Fort* also considered the constitutionality of section 5–9–1.1(c) of the Unified Code of Corrections (730 ILCS 5/5–9–1.1(c) (West 2004)). However, *Fort* did not add to the analysis of *Rodriguez*. Rather, the court quoted the discussion from *Rodriguez* noted above, concerning the lack of relationship between spinal cord injury and simple possession of a controlled substance (as opposed to operation of a motor vehicle under the influence of a controlled substance). *Fort*, 362 Ill. App. 3d at 9-10. The court stated that because the State's arguments in favor of constitutionality were "virtually identical" to the arguments in *Rodriguez*, the court saw "no reason to depart from the holding in *Rodriguez*." *Fort*, 362 Ill. App. 3d at 10.

*Fort* did, however, conduct an extensive analysis of the issue of whether a defendant may claim a credit for presentencing

-5-

incarceration (see 725 ILCS 5/110–14 (West 2004)) against a drug assessment imposed pursuant to section 411.2 of the Illinois Controlled Substances Act (720 ILCS 570/411.2 (West 2004)). The court noted that the resolution of this issue depended on whether the charge was a "fine" or "something else, like a fee or court cost, which is a charge taxed by a court, compensatory in nature." *Fort*, 362 Ill. App. 3d at 4. Only if the charge were a fine, the court held, would a defendant be entitled to the credit allowed by section 110–14 of the Code of Criminal Procedure of 1963. *Fort*, 362 Ill. App. 3d at 4.

The court noted that numerous previous decisions of the appellate court had addressed the issue of whether a defendant was entitled to a presentencing credit against a drug assessment, concluding that the decisions amounted to "a shutout against the State." *Fort*, 362 Ill. App. 3d at 5. Although the State argued that all of the previous decisions were erroneous, the court "decline[d] the State's invitation to reject the consistent line of appellate decisions that allows the sentence credit against the drug assessment." *Fort*, 362 Ill. App. 3d at 6.

The court offered several reasons for its conclusion that the charge was a "fine." The first was the ambiguity of the statutory language. *Fort*, 362 Ill. App. 3d at 7. Militating against construing the charge to be a fine were the facts that the statute imposing the charge was located in a section "separate from the fines provision for convictions under the Controlled Substances Act" and the fact that the statute never explicitly referred to the charge as a fine. *Fort*, 362 Ill. App. 3d at 7. The court found countervailing evidence in the fact that the statute did refer to the assessment as a "penalty." *Fort*, 362 Ill. App. 3d at 7. Concluding that the statute was ambiguous, the court looked to the legislative history, and noted that one of the sponsors of the bill enacting section 411.2 repeatedly referred to the charge imposed as a fine. *Fort*, 362 Ill. App. 3d at 7, quoting 87th Ill. Gen. Assem., Senate Proceedings, July 18, 1991, at 186-87 (statements of Senators Cullerton and Barkhausen). *Fort* buttressed its conclusion that the charge was a fine by noting that not only had numerous decisions of the appellate court so construed it, but the legislature had not reacted to those decisions. The court observed that although cases addressing "the credit against amendment issue" were decided in 1993, 1994 and 1995, and the legislature had amended section 411.2

in 1994, 1995, and 1997, none of the amendments addressed this issue. Noting the rule of construction that " '[w]hen the legislature amends a statute, but leaves unchanged portions which have been judicially construed, the unchanged position will retain the construction given prior to the amendment,' " the court concluded that this inaction on the legislature's part constituted additional strong evidence that the previous decisions were correct. *Fort*, 362 Ill. App. 3d at 8, quoting *People v. Agnew*, 105 Ill. 2d 275, 280 (1985).

As noted, the appellate court in the instant case relied heavily on *Fort* and *Rodriguez*. The court relied directly on these two cases to hold that the Spinal Cord Paralysis charge was unconstitutional and that the drug assessment was subject to offset by the presentencing incarceration credit. The court also held that defendant was entitled to credit against the $4 "Criminal/Traffic Conviction Surcharge" (see 730 ILCS 5/5–9–1(c–9) (West 2004)), and the $100 "Trauma Fund" charge (see 730 ILCS 5/5–9–1.1(b) (West 2004)), which the appellate court also found to be fines.

ANALYSIS

As previously noted, the only issues before this court concern the charges imposed on defendant in conjunction with his conviction. The arguments can be broken into two categories: preincarceration credit and constitutionality. We address each in turn.

I. Presentencing Incarceration Credit

We turn first to the appellate court's ruling that defendant's presentencing incarceration entitled him to a $604 credit against the $4 Criminal/Traffic Conviction Surcharge, the $500 Assessment Controlled Substance, and the $100 Trauma Fund charge. The statute establishing the presentencing credit is section 110–14(a) of the Code of Criminal Procedure, which provides:

"Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant. However, in no case shall the amount so allowed or credited exceed the amount of the fine." 725 ILCS 5/110–14(a) (West 2004).

The parties do not dispute that defendant was incarcerated on a bailable offense for 274 days before sentencing, and accordingly is entitled to a credit of up to $1,370. The parties also agree that the credit under section 110–14 operates to offset only fines, not fees. See 725 ILCS 5/110–14 (a) (West 2004). Accordingly, whether defendant was entitled to the credit against any charge imposed on him turns solely on whether that charge constituted a "fine" or a "fee."

This is a matter of statutory interpretation. The construction of a statute is a question of law, which is reviewed *de novo*. *In re Estate of Dierkes*, 191 Ill. 2d 326, 330 (2000). The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503-04 (2000). Accordingly, courts should consider the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it. *People v. Davis*, 199 Ill. 2d 130, 135 (2002). The best indication of legislative intent is the statutory language, given its plain and ordinary meaning. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479 (1994). Where the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction. *Davis v. Toshiba Machine Co., America*, 186 Ill. 2d 181, 184-85 (1999). We construe statutes as a whole, so that no part is rendered meaningless or superfluous. *People v. Jones*, 214 Ill. 2d 187, 193 (2005); *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 397 (1994). When construing criminal statutes, the rule of lenity requires that any ambiguity must be resolved in that manner which favors the accused. *People v. Davis*, 199 Ill. 2d 130, 140 (2002), citing *People ex rel. Gibson v. Cannon*, 65 Ill. 2d 366, 370-71 (1976). However, this rule must not be stretched so far as to defeat the legislature's intent. *In re Detention of Powell*, 217 Ill. 2d 123, 142 (2005) (citing *People v. Brooks*, 158 Ill. 2d 260, 264 (1994), and *People v. Washington*, 343 Ill. App. 3d 889, 903 (2003)).

Our appellate court has had cause to consider the distinguishing characteristics of a fee and a fine, and explained them as follows:

> "A 'fine' is a pecuniary punishment imposed as part of a sentence on a person convicted of a criminal offense. *People v. Despenza*, 318 Ill. App. 3d 1155, 1157 (2001). A 'cost' is a charge or fee taxed by a court such as a filing fee, jury fee,

> courthouse fee, or reporter fee. *Despenza*, 318 Ill. App. 3d at
> 1157. Unlike a fine, which is punitive in nature, a cost does
> not punish a defendant in addition to the sentence he received,
> but instead is a collateral consequence of the defendant's
> conviction that is *compensatory in nature*. *People v. Terneus*,
> 239 Ill. App. 3d 669, 672 (1992). A 'fee' is a charge for labor
> or services, especially professional services. Black's Law
> Dictionary 629 (7th ed. 1999)." (Emphasis added.) *People v.*
> *White*, 333 Ill. App. 3d 777, 781 (2002).

We agree with this characterization. See also Black's Law Dictionary 647, 664 (8th ed. 2004) (a "fee" is a "charge for labor or services, especially professional services," whereas a "fine" is a "pecuniary criminal punishment or civil penalty payable to the public treasury"). Broadly speaking, a "fine" is a part of the punishment for a conviction, whereas a "fee" or "cost" seeks to recoup expenses incurred by the State – to "compensat[e]" the State for some expenditure incurred in prosecuting the defendant.[1] With these rules in mind, we turn to the specific provisions at issue in this case.

### A. *Criminal/Traffic Conviction Surcharge*

We first consider the $4 Criminal/Traffic Conviction Surcharge. This charge was imposed pursuant to section 5–9–1(c–9) of the Unified Code of Corrections (730 ILCS 5/5–9–1(c–9) (West 2004)). At the time of defendant's conviction this statute provided as follows:

> "There shall be added to every fine imposed in sentencing
> for a criminal or traffic offense, except an offense relating to
> parking or registration, or offense by a pedestrian, an
> additional penalty of $4 imposed. The additional penalty of $4
> shall also be added to every fine imposed upon a plea of guilty,
> stipulation of facts or findings of guilty, resulting in a
> judgment of conviction, or order of supervision in criminal,
> traffic, local ordinance, county ordinance, or conservation
> cases (except parking, registration, or pedestrian violations),

---

[1]Because this case does not require us to differentiate between a "fee" and a "cost," we will hereinafter simply refer to them both as "fees," as opposed to a "fine."

or upon a sentence of probation without entry of judgment under Section 10 of the Cannabis Control Act or Section 410 of the Controlled Substances Act. Such additional penalty of $4 shall be assessed by the court imposing the fine and shall be collected by the circuit clerk in addition to any other fine, costs, fees, and penalties in the case. Each such additional penalty of $4 shall be remitted to the State Treasurer by the circuit clerk within one month after receipt. The State Treasurer shall deposit the additional penalty of $4 into the Traffic and Criminal Conviction Surcharge Fund. The additional penalty of $4 shall be in addition to any other fine, costs, fees, and penalties and shall not reduce or affect the distribution of any other fine, costs, fees, and penalties." 730 ILCS 5/5–9–1(c–9) (West 2004).

As defendant notes, the plain language of section 5–9–1(c–9) strongly suggests that the charge ought to be considered to be in the nature of a fine, not a fee. The statute repeatedly refers to the charge as a "penalty," which connotes a fine, not a fee. See *White*, 333 Ill. App. 3d at 781. Moreover, the statute states that the "penalty" is to be "added" to the "fine." This statutory language strongly suggests that the legislature intended the surcharge in section 5–9–1(c–9) to constitute a fine. As the State notes, the label used by the legislature is not necessarily definitive. See *Crocker v. Finley*, 99 Ill. 2d 444, 452 (1984) (holding that although a $5 charge was consistently labeled a "fee" within the statute imposing it, it was "in reality a tax"); *People v. Elizalde*, 344 Ill. App. 3d 678, 682 (2003) (both legislature's characterization of charge and charge's substantive character are relevant to determination of whether charge is subject to offset under section 110–14(a)). However, the label is strong evidence of the legislature's intent, especially because the legislature not only referred to the charge in a consistent fashion as a "penalty" to be "added" to the "fine" but also used other labels–"other fine, costs, fees, and penalties" (730 ILCS 5/5–9–1(c–9) (West 2004))–within the same statute, buttressing the conclusion that the terms used were intentional.

Nevertheless, the State argues that the charge is actually in the nature of a fee, not a fine. The State calls our attention to the statute creating the traffic and criminal conviction surcharge fund, section 9

of the Illinois Police Training Act (50 ILCS 705/9 (West 2004)). The State notes that the fund is to be used to train governmental employees in law enforcement techniques (see 50 ILCS 705/9(2), (4), (5) (West 2004)), and argues that this makes the charge a "fee," according to the definition that a fee is intended to compensate the State for the costs of prosecuting the defendant. See *White*, 333 Ill. App. 3d at 781.

Defendant responds that the State's argument sweeps far too broadly, and we agree. The fact that the proceeds of this charge may be used for general police training does not mean that the charge reimburses the State for the cost of prosecuting the defendant and is therefore a fee. As defendant and our appellate court have noted, section 27.6(a) of the Clerks of Courts Act directs that with limited exceptions, some portion[2] of *all* "fees, fines, costs, additional penalties, bail balances assessed or forfeited, and any other amount paid by a person to the circuit clerk equalling an amount of $55 or more" are to be deposited into the Traffic and Criminal Conviction Surcharge Fund. 705 ILCS 105/27.6(a) (West 2004). This does not mean that every charge is a fee.

The State also argues that the charge should be considered a fee based on the precedent of *Ali v. Danaher*, 47 Ill. 2d 231 (1970). There, we considered the constitutionality of a $1 "library fee" imposed on all litigants filing civil actions, which fee was intended to help finance the construction or upkeep of county law libraries. Several arguments were raised against the fee: the plaintiff contended that the fee violated separation of powers principles, that it constituted an improper "litigation tax," and that it was not assessed equally to all litigants. *Ali*, 47 Ill. 2d at 234. We upheld the fee. In so holding, we stated that funding a county law library is a proper purpose for a "fee," because such a library "is conducive to a proper and even improved administration of justice." *Ali*, 47 Ill. 2d at 237. The State argues that training government employees in law enforcement techniques is similarly conducive to an improved administration of

---

[2]Specifically, "5.052/17" of 16.825%. 705 ILCS 105/27.6(a) (West 2004).

justice and therefore the charge at issue in this case ought be construed as a fee.

The case is clearly distinguishable, for the fundamental reason that *Ali* did not involve any attempt to distinguish between a "fee" and a "fine." Indeed, the statute imposing the fee at issue in *Ali* specified that the fee was to be assessed only in civil litigation and " 'shall not be charged in any criminal or quasi-criminal case.' " *Ali*, 47 Ill. 2d at 234, quoting Ill. Rev. Stat. 1969, ch. 81, par. 81. The statement to which the State directs our attention is taken entirely out of context and is not sufficient to support the State's argument that we should override the statutory language indicating that the charge is a "penalty." Moreover, as a final note, we later clarified that the charge imposed in *Ali* was in fact *not* a "fee" but a "tax," because the charge was not imposed to defray costs specific to the litigation in which it was imposed. *Crocker*, 99 Ill. 2d at 452 ("court charges imposed on a litigant are fees if assessed to defray the expenses of *his* litigation" (emphasis added)). See also *Arangold*, 204 Ill. 2d at 148-49 (reaffirming that the charge at issue in *Ali*, although labeled a fee, "in reality, was a tax"). Although the State need not demonstrate that a fee represents the exact cost incurred in defendant's litigation (see, *e.g.*, *White*, 333 Ill. App. 3d at 782 (finding probation and lab analysis fees are fees, not fines, even though State did not show that they reflected actual costs the state incurred in prosecuting the defendant's case)), a fee must at least *relate* to charges incurred in the defendant's case.

The State also argues that the legislature cannot have intended to allow this charge to be offset, because everyone who is arrested spends at least part of one day in jail and would thus be entitled to at least a $5 credit for time served. Because this charge is only $4, a $5 credit would wipe out this charge in all cases. However, as was observed at oral argument, this fails to consider the fact that the charge could survive any case where this was not the only fine imposed against defendant. Our ruling here does not have the practical effect of extinguishing this charge in all cases, as the State suggests.

Finally, the State notes that in 2005, subsequent to defendant's conviction, the legislature repealed subsection (c–9) and added the $4 surcharge previously imposed in this section to a similar $5 surcharge imposed in subsection (c). Noting that subsection (c) expressly

-12-

provides that the charge is not subject to offset for presentencing incarceration, the State contends that the legislature must have intended the same to be true of subsection (c–9) all along. We do not find this argument convincing.

We faced a similar argument in *People v. Hare*, 119 Ill. 2d 441, 450-51 (1988). There, as here, at the time of the defendant's conviction the statute imposing the fine at issue lacked any provision excluding the fine from offset for presentencing incarceration credit. In *Hare*, the statute imposing the fine was subsequently amended to so provide. We acknowledged the rule of construction that an amendment to a statute may be a legislative attempt to clarify the meaning of the statute, but we also noted a countervailing rule that an amendment "gives rise to the presumption that the new legislation was intended to effect a change in the law as it formerly existed." *Hare*, 119 Ill. 2d at 450-51. We stated that which of the two rules should apply depends on the circumstances involved, specifically, whether the statute was unclear prior to the amendment. We concluded in *Hare* that the statute was not unclear before the amendment adding the provision excluding the fine from offset and, accordingly, concluded that the amendment constituted a change. The same reasoning applies here. Indeed, as defendant notes, this case would be an even less likely candidate than *Hare* for interpreting an amendment as a clarification of prior legislative intent, because the legislature did not amend subsection (c–9); it *repealed* that subsection.

Finally, we note that although subsection (c) has existed for a number of years, subsection (c–9) enjoyed a comparatively brief existence, enacted in 2003 and repealed in 2005. For the entire time that subsections (c) and (c–9) coexisted, subsection (c) contained the provision that the charge imposed therein was not subject to offset, while subsection (c–9) contained no such provision. This fact, that the legislature enacted subsection (c–9) without the exclusion when subsection (c) of the same statute did contain such a provision, further strengthens our conclusion that the "penalty" imposed pursuant to subsection (c–9) was not intended to be exempted from offset.

Accordingly, we conclude that the charge imposed by section 5–9–1(c–9) is subject to offset.

B. *Assessment Controlled Substance*

We next address the $500 "Assessment Controlled Substance." This charge, imposed pursuant to section 411.2(a) of the Illinois Controlled Substances Act (720 ILCS 570/411.2(a) (West 2004)), is commonly referred to as a "drug assessment." Section 411.2 provides in relevant part as follows:

> (a) Every person convicted of a violation of this Act, and every person placed on probation, conditional discharge, supervision or probation under Section 410 of this Act, shall be assessed for each offense a sum fixed at:
>
> * * *
>
> (4) $500 for a Class 3 or Class 4 felony;
>
> * * *
>
> (e) A defendant who has been ordered to pay an assessment may petition the court to convert all or part of the assessment into court-approved public or community service. One hour of public or community service shall be equivalent to $4 of assessment. The performance of this public or community service shall be a condition of the probation, conditional discharge or supervision and shall be in addition to the performance of any other period of public or community service ordered by the court or required by law.
>
> (f) The court may suspend the collection of the assessment imposed under this Section; provided the defendant agrees to enter a substance abuse intervention or treatment program approved by the court \*\*\*. \*\*\* Upon successful completion of the program, the defendant may apply to the court to reduce the assessment imposed under this Section by any amount actually paid by the defendant for his participation in the program. The court shall not reduce the *penalty* under this subsection unless the defendant establishes to the satisfaction of the court that he has successfully completed the intervention or treatment program \*\*\*." (Emphasis added.) 720 ILCS 570/411.2(a), (e), (f) (West 2004).

Our appellate court has consistently concluded that a section 411.2 drug assessment is a "fine," not a "fee," and thus is subject to offset by presentencing incarceration credit. See, *e.g.*, *People v.*

*Youngblood*, 365 Ill. App. 3d 210, 214-15 (2006); *People v. McNeal*, 364 Ill. App. 3d 867, 873-74 (2006); *Fort*, 362 Ill. App. 3d at 5-8 (and cases cited therein); *People v. Gathing*, 334 Ill. App. 3d 617, 620 (2002); *People v. Brown*, 242 Ill. App. 3d 465, 466 (1993). We agree with these decisions.

*Fort* is instructive on this point. There, the appellate court noted that by labeling the charge an "assessment," the legislature did not clearly indicate whether the charge was in the nature of a fine, subject to offset, or in the nature of a fee. However, the legislature did refer to the charge as a "penalty" in subsection (f), a term which denotes a fine, not a fee. *Fort*, 362 Ill. App. 3d at 7. Moreover, assuming that the statute was ambiguous, *Fort* noted that the legislative history characterized the charge as a fine:

> "Referring to the proposed section 411.2, Senator Cullerton asked: 'I'm just curious, though, if–does this reallocate money which is now being sent somewhere, or does it purport to increase the *fines* for people who are charged with drug offenses?' (Emphasis added.) Senator Barkhausen, a sponsor of the bill, answered:
>
> > 'Yes, it's an increase. It's a new *fine*; although, we had amended the bill a second time through, and I believe the provisions are here again–I was just looking for them–to give the court some discretion to require community service work for those who can't pay *fines*. But this is new money. It's not a reallocation of any old money.' (Emphasis added.)" *Fort*, 362 Ill. App. 3d at 7, quoting 87th Ill. Gen. Assem., Senate Proceedings, July 18, 1991, at 186-87 (statements of Senators Cullerton and Barkhausen).

Finally, *Fort* noted that although the drug assessment had been construed as a fine for several years, and the legislature had numerous times amended section 411.2, the legislature had never taken action to override the unanimous conclusion that the drug assessment was subject to offset. This fact lends support to the conclusion that the legislature acquiesced in the earlier decisions, and constitutes a strong reason to adhere to the prior decisions. *Fort*, 362 Ill. App. 3d at 8 (quoting *Agnew*, 105 Ill. 2d at 280, and citing *People ex rel.*

*Department of Labor v. Tri State Tours, Inc.*, 342 Ill. App. 3d 842, 847 (2003)).

The State acknowledges the above authority. Indeed, the State admits in its brief to this court that the assessment is "punitive in nature" and "its purpose is not related to compensating the state for the costs of criminal investigation and prosecution." However, the State argues that the legislature has the authority to exempt specific charges from the $5 credit allowed by section 110–14 of the Code of Criminal Procedure and contends that the legislature did implicitly exempt the section 411.2 drug assessment by providing that the assessment could be reduced or removed if the defendant performed community service or participated in a substance abuse intervention or treatment program. See 720 ILCS 570/411.2(e), (f) (West 2004). The State argues that permitting a defendant to receive presentencing incarceration credit would violate the legislative intent to promote community service and drug treatment by providing that community service and drug treatment would be the only ways to reduce the drug assessment.

We reject this argument. Nothing in the statute indicates that the legislature intended that community service and drug treatment would be the exclusive means to reduce a drug assessment. The notion that the legislature intended to preempt presentencing credit is dealt a severe blow by the fact that the presentencing credit is mandatory, whereas the reductions provided for in subsections (e) and (f) are discretionary. Compare 725 ILCS 5/110–14(a) (West 2004) ("Any person *** *shall* be allowed a credit of $5 for each day ***" (emphasis added)) with 720 ILCS 570/411.2(e) (West 2004) ("[a] defendant *** *may* petition the court to convert all or part of the assessment into court-approved public or community service" (emphasis added)) and 720 ILCS 570/411.2(f) (West 2004) ("The court *may* suspend the collection of the assessment imposed under this Section; provided the defendant agrees to enter a substance abuse intervention or treatment program approved by the court ***. *** Upon successful completion of the program, the defendant *may* apply to the court to reduce the assessment imposed under this Section by any amount actually paid by the defendant for his participation in the program" (emphases added)).

-16-

Moreover, the State provides no explanation why the legislature would have taken such a circuitous route of implicit preemption when it could simply have spelled out that the assessment was not subject to reduction for presentencing incarceration credit, as the legislature has done in numerous other statutes. See, *e.g.*, 705 ILCS 105/27.6(b) (West 2004) ("This additional fee of $100 shall not be considered a part of the fine for purposes of any reduction in the fine for time served either before or after sentencing"); 705 ILCS 105/27.6(b–1) (West 2004) ("This additional fee of $5 shall not be considered a part of the fine for purposes of any reduction in the fine for time served either before or after sentencing"); 705 ILCS 105/27.6(c) (West 2004) ("This additional fee of $100 shall not be considered a part of the fine for purposes of any reduction in the fine for time served either before or after sentencing"); 705 ILCS 105/27.6(c–1) (West 2004) ("This additional fee of $5 shall not be considered a part of the fine for purposes of any reduction in the fine for time served either before or after sentencing"); 730 ILCS 5/5–9–1(c) (West 2004) ("Such additional penalty shall not be considered a part of the fine for purposes of any reduction in the fine for time served either before or after sentencing"); 730 ILCS 5/5–9–1(c–5) (West 2004) ("This additional fee of $100 shall not be considered a part of the fine for purposes of any reduction in the fine for time served either before or after sentencing"); 730 ILCS 5/5–9–1(c–7) (West 2004) ("This additional fee of $5 shall not be considered a part of the fine for purposes of any reduction in the fine for time served either before or after sentencing"); 730 ILCS 5/5–9–1.1(c) (West 2004) ("This additional fee of $5 shall not be considered a part of the fine for purposes of any reduction in the fine for time served either before or after sentencing"); 730 ILCS 5/5–9–1.6 (West 2004) ("Such additional penalty shall not be considered a part of the fine for purposes of any reduction in the fine for time served either before or after sentencing"); 730 ILCS 5/5–9–1.10 (West 2004) ("This additional fee of $100 shall not be considered a part of the fine for purposes of any reduction in the fine for time served either before or after sentencing"); 730 ILCS 5/5–9–1.11(a) (West 2004) ("The additional penalty shall not be considered a part of the fine for purposes of any reduction in the fine for time served either before or after sentencing"). Clearly the legislature knows how to provide that

-17-

a particular charge is not to be subject to reduction by credit for presentencing (or postsentencing) incarceration, and the legislature did not do so with respect to the drug assessment.

Further, the State's argument ignores the fact observed in *Fort* that the drug assessment has consistently been construed as a fine subject to reduction for presentencing incarceration, and the legislature has never amended the statute in any way so as to repudiate those holdings. This indicates legislative acquiescence in the construction accorded to the statute by the previous decisions. *Agnew*, 105 Ill. 2d at 280; *Tri State Tours, Inc.*, 342 Ill. App. 3d at 847. Accordingly, we agree with the appellate court that the drug assessment is subject to reduction by credit for presentencing incarceration pursuant to section 110–14 (a) of the Code of Criminal Procedure (725 ILCS 5/110–14(a) (West 2004)).

## C. *Trauma Fund*

The final charge which the appellate court determined was subject to the presentencing incarceration credit is the $100 Trauma Fund charge. The statutory authority for this charge is found in section 5–9–1.1(b) of the Unified Code of Corrections (730 ILCS 5/5–9–1.1(b) (West 2004)), which provides as follows:

> "(b) In addition to any penalty imposed under subsection (a) of this Section [which mandates imposition of a fine at least equivalent to the street value of the drugs seized], a fine of $100 shall be levied by the court, the proceeds of which shall be collected by the Circuit Clerk and remitted to the State Treasurer under Section 27.6 of the Clerks of Courts Act for deposit into the Trauma Center Fund for distribution as provided under Section 3.225 of the Emergency Medical Services (EMS) Systems Act." 730 ILCS 5/5–9–1.1(b) (West 2004).

There is no question that the $100 Trauma Fund charge is a fine. Not only is it called a fine, it is also referred to as an "addition to" a "penalty," and it is clearly not intended to reimburse the state for any expense of prosecution or investigation. Moreover, section 5–9–1.1(b) does not contain any provision to the effect that the Trauma Fund charge is not subject to setoff.

The State concedes all of these points. Nevertheless, the State contends that the legislature did not intend for this fine to be subject to reduction for time served prior to sentencing. The State bases its argument on the reference to section 27.6 of the Clerks of Courts Act. That section provides in pertinent part as follows:

> "(c) In addition to any other fines and court costs assessed by the courts, any person convicted for a violation of [*inter alia*, the Illinois Controlled Substances Act] shall pay an additional fee of $100 to the clerk of the circuit court. This amount, less 2½% that shall be used to defray administrative costs incurred by the clerk, shall be remitted by the clerk to the Treasurer within 60 days after receipt for deposit into the Trauma Center Fund. *This additional fee of $100 shall not be considered a part of the fine for purposes of any reduction in the fine for time served either before or after sentencing*." (Emphasis added.) 705 ILCS 105/27.6(c) (West 2004).

The State contends that section 27.6(c) of the Clerk of Courts Act, along with its explicit direction that the $100 charge is not subject to reduction for presentencing incarceration, is incorporated by reference into section 5–9–1.1(b) of the Unified Code of Corrections. In two recently published decisions the appellate court has agreed with this argument, and concluded that the $100 Trauma Center Fund charge is not subject to offset for presentencing incarceration. See *People v. Jones*, 366 Ill. App. 3d 666 (2006); *People v. Squire*, 365 Ill. App. 3d 842 (2006).

Defendant raises a compelling response to this analysis, however. Defendant notes that sections 5–9–1.1(c) and 5–9–1.10 of the Unified Code of Corrections (730 ILCS 5/5–9–1.1(c), 5–9–1.10 (West 2004)) not only refer to section 27.6 of the Clerks of Courts Act but *also* expressly state that the charges assessed therein are exempt from presentencing credit offset. Defendant argues that to conclude that the reference to section 27.6 of the Clerks of Courts Act is sufficient to preclude offset would render the anti-offset language in these other statutes redundant and superfluous. The State responds, essentially, that these other statutes are irrelevant because the legislature's intent is perfectly clear.

We find defendant's argument convincing. Sections 5–9–1.1(c) and 5–9–1.10 not only provide that the charges assessed therein are

to be remitted pursuant to section 27.6 of the Clerks of Courts Act but also explicitly state that the charges are not subject to offset. If the legislature intended the mere reference to the Clerks of Courts Act to suffice to exempt the charges from offset, as the State argues, then the anti-offset language contained in sections 5–9–1.1(c) and 5–9–1.10 would be entirely redundant and superfluous. We reject the State's contention that we should ignore this fact; our rule that we construe statutes as a whole is intended to avoid just such a situation as the defendant brings to our attention, where one possible construction would render another statutory provision meaningless or superfluous. See *Jones*, 214 Ill. 2d at 193; *Bonaguro*, 158 Ill. 2d at 397. This is not to say that defendant's construction is clearly correct; his argument that the Trauma Fund charge imposed by section 5–9–1.1(b) is subject to offset would seem to render meaningless the anti-offset language in the Clerks of Courts Act. Neither construction is perfect, and it is not clear which construction the legislature would prefer. In such circumstances, we are guided by the rule that ambiguity in criminal statutes must be resolved in that manner which favors the accused. *Davis*, 199 Ill. 2d at 140; *Brooks*, 158 Ill. 2d at 264. Accordingly, we conclude that the Trauma Fund charge is subject to setoff.

We invite the legislature to clarify this ambiguity. Unless and until it does so, however, we must agree with the appellate court that the Trauma Fund charge is subject to setoff. To the extent that the decisions in *Jones*, 366 Ill. App. 3d 666, and *Squire*, 365 Ill. App. 3d 842, conflict with our holding, they are overruled.


II. Constitutionality of Section 5–9–1.1(c) of the Unified Code of Corrections

The other issue in this case is the constitutionality of section 5–9–1.1(c) of the Unified Code of Corrections (730 ILCS 5/5–9–1.1(c) (West 2004)). The State argues that the appellate court erred in finding the statute unconstitutional. The State argues that the $5 charge is a fine, not a fee, and fines need not satisfy the same due process concerns as fees. In the alternative, the State contends that collecting a $5 fee from drug offenders is reasonably related to the goal of funding spinal cord injury and paralysis research. Defendant responds that the statute must satisfy due process whether the charge is labeled a fee or a fine, and argues that the appellate court was

correct in holding that simple drug possession is too attenuated from spinal cord injury for this court to find a rational relation between the two.

Statutes are presumed constitutional (*Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 351 (1999)), and we have the duty to construe statutes so as to uphold their constitutionality if there is any reasonable way to do so (*People v. Inghram*, 118 Ill. 2d 140, 146 (1987)). The party challenging the validity of a statute has the burden of clearly establishing a constitutional violation. *In re R.C.*, 195 Ill. 2d 291, 296 (2001). Because constitutionality is a pure question of law, our standard of review is *de novo*. *Davis v. Brown*, 221 Ill. 2d 435, 443 (2006).

Defendant argues specifically that section 5–9–1.1(c) violates substantive due process. The parties agree that the statute does not impact on fundamental rights. Accordingly, the relevant standard by which the statute is evaluated is rational basis review. *Davis*, 221 Ill. 2d at 450. To be upheld under this standard, the statute need merely bear a rational relationship to a legitimate state interest. *Davis*, 221 Ill. 2d at 450. Although this standard of review is quite deferential, it is not "toothless" (*Mathews v. De Castro*, 429 U.S. 181, 185, 50 L. Ed. 2d 389, 394, 97 S. Ct. 431, 434 (1976)), and we must strike down provisions which run afoul thereof (*People v. Lindner*, 127 Ill. 2d 174, 184 (1989)).

The appellate court found that section 5–9–1.1(c) failed to pass the rational basis test. In so holding, the court, following *Rodriguez*, 362 Ill. App. 3d 44, and *Fort*, 362 Ill. App. 3d 1, focused solely on whether the statute bore a rational relationship to the interest of funding research into finding a cure for spinal-cord-injury-related paralysis. The court held that whatever connection might exist between possession of a controlled substance and spinal-cord-injury-related paralysis was simply too tenuous and abbreviated to satisfy due process. Several recent decisions of the First District of the appellate court have reached the same conclusion, also relying on *Fort* and *Rodriguez*. See *People v. Gorosteata*, No. 1–04–2469 (September 29, 2006); *People v. Morrison*, 367 Ill. App. 3d 581 (2006); *People v. Blakney*, 366 Ill. App. 3d 925 (2006); *People v. Jones*, 366 Ill. App. 3d 666, 670 (2006). See also *People v. McNeal*, 364 Ill. App. 3d 867,

875 (2006) (finding statute unconstitutional in context of possession with intent to deliver).

The parties agree that the State has a legitimate interest in finding a cure for spinal-cord-injury-related paralysis. The dispute with respect to that interest centers on whether section 5–9–1.1(c) bears a rational relationship thereto. However, the State also argues that the charge imposed by the statute is a fine, and thus serves another interest: punishment of a convicted criminal. When viewed in this light, the State argues, the $5 charge imposed by section 5–9–1.1(c) is clearly a rational nondisproportionate penalty to impose for the offense of which the defendant has been convicted, possession of a controlled substance. The State contends that it is irrelevant that the money collected is earmarked for a particular purpose, the only inquiry should be whether the charge imposed is rationally related to punishment for defendant's crime. The State argues that in light of the fact that possession of a controlled substance can incur a fine of up to $25,000 (see 730 ILCS 5/5–9–1(a)(1) (West 2004)), the $5 charge imposed pursuant to section 5–9–1.1(c) cannot be considered disproportionate. The State argues that therefore the charge ought to be upheld.

Defendant disagrees. He argues that the charge is a fee, as indicated by the plain language of the statute, and argues further that the State ought to be estopped from arguing otherwise, because the State argued that the charge was a fee in the appellate court proceedings. Defendant reasons that if the charge is a fee, it does not have the purpose of punishment, and thus the appellate court's analysis must be followed. Defendant argues in the alternative that even if we were to find the charge to be a fine, this court's precedent still requires that there be a rational relationship between the crime committed and the interest served by the particular punishment the legislature has chosen to impose, citing *Lindner*, 127 Ill. 2d 174.

## A. *"Fee" or "Fine"?*

Thus the first question we must address is whether the charge imposed by section 5–9–1.1(c) is a fee or a fine.

As a threshold matter, defendant argues that the State should not be permitted to take the position that the charge imposed by section 5–9–1.1(c) is a fine, because the State stated that the charge was a fee

in a footnote in its appellate court brief. We disagree that the State is precluded from arguing that the charge is a fine.

Defendant's complaint sounds in the doctrine of judicial estoppel. As this court has explained,

> "Five elements are generally required for the doctrine of judicial estoppel to apply: the party to be estopped must have (1) taken two positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intending for the trier of fact to accept the truth of the facts alleged, and (5) *have succeeded in the first proceeding and received some benefit from it.*" (Emphasis added.) *People v. Caballero*, 206 Ill. 2d 65, 80 (2002).

Application of the doctrine is discretionary. *Caballero*, 206 Ill. 2d at 80.

The doctrine does not apply in this case for a number of reasons. First, the State's two positions were not factually inconsistent–there was no dispute that the charge was imposed, the only question was whether the charge was a "fine" or a "fee." These positions were merely legally inconsistent. Second, the State's two positions were not adopted in *separate* proceedings. The appeal before this court is a continuation of the proceedings before the appellate court and the proceedings before the circuit court. Finally, the doctrine cannot apply because the State did not succeed or receive any benefit from its position in the appellate court. Accordingly, we proceed to the merits.

Section 5–9–1.1(c) provides as follows:

> "In addition to any penalty imposed under subsection (a) of this Section, a fee of $5 shall be assessed by the court, the proceeds of which shall be collected by the Circuit Clerk and remitted to the State Treasurer under Section 27.6 of the Clerks of Courts Act for deposit into the Spinal Cord Injury Paralysis Cure Research Trust Fund. This additional fee of $5 shall not be considered a part of the fine for purposes of any reduction in the fine for time served either before or after sentencing." 730 ILCS 5/5–9–1.1(c) (West 2004).

As defendant notes, the statute does call the charge a "fee." This constitutes strong evidence as to how the charge should be characterized. However, as previously noted, the label attached by the legislature is not necessarily definitive. See *Crocker*, 99 Ill. 2d at 452

(a charge labeled a "fee" was "in reality a tax"); *Elizalde*, 344 Ill. App. 3d at 682. We note that the statute is ambiguous, in that although the statute does label the charge a fee it also states that the charge "shall not be considered a part of the fine for purposes of any reduction in the fine for time served either before or after sentencing." If the charge were truly a fee, there would be no need for the legislature to have included this language because, as the parties agree, the credit for presentence incarceration can only reduce fines, not fees. See 725 ILCS 5/110–14 (West 2004). Thus to conclude the charge is a fee would render this section of the statute superfluous, a construction to be avoided. *Jones*, 214 Ill. 2d at 193; *Bonaguro*, 158 Ill. 2d at 397.

In this case, notwithstanding the label attached by the legislature, we believe that the charge at issue is in fact a fine. The legislature's label is strong evidence, but it cannot overcome the actual attributes of the charge at issue, as we have repeatedly recognized. See *Boynton v. Kusper*, 112 Ill. 2d 356, 365 (1986) (holding that a portion of the marriage license "fee" which had no relation to the services supposedly supported by that fee "is a tax"); *Crocker*, 99 Ill. 2d at 452 (although legislature labeled charge a "fee" it was "in reality a tax" because "court charges imposed on a litigant are fees if assessed to defray the expenses of his litigation"). See also *Arangold*, 204 Ill. 2d at 148-49 (noting that the charges at issue in *Boynton* and *Crocker*, although labeled fees, were in fact taxes). In this case, the $5 charge imposed pursuant to section 5–9–1.1(c) possesses only the attributes of a fine and none of the attributes of a fee. To begin, the charge is imposed only after conviction for a criminal offense, it is contained in article 9 of chapter V of the Unified Code of Corrections–an article entitled "Fines"–and it is payable to the state treasury. The appellate court in *Rodriguez* found these characteristics insufficient to override the plain language of the statute. See *Rodriguez*, 362 Ill. App. 3d at 51-52. But *Rodriguez* does not appear to have considered what we consider to be the most important fact, that this charge does not seek to compensate the state for any costs incurred as the result of prosecuting the defendant. This is the *central* characteristic which separates a fee from a fine. A charge is a fee if and only if it is intended to reimburse the state for some cost incurred in defendant's prosecution. *Boynton*, 112 Ill. 2d at 364-65; *Crocker*, 99 Ill. 2d at 452; *White*, 333 Ill. App. 3d at 781; *People v. Terneus*, 239 Ill. App. 3d 669, 672 (1992). In this case, with respect to this charge, all

evidence is to the contrary–indeed, defendant's central argument is that the purpose of the charge is not even rationally related to the crime he committed. The charge is clearly a fine, the label notwithstanding.

Defendant argues that the charge is not in the nature of a fine because the amount of the charge does not vary depending on the severity of defendant's conduct, citing *People v. Youngblood*, 365 Ill. App. 3d 210 (2006). We find this argument unconvincing. In *Youngblood*, the court addressed the question of whether the drug assessment pursuant to section 411.2 was subject to offset for presentencing credit pursuant to section 110–14. The court concluded that the drug assessment was in the nature of a fine–and, thus, subject to offset–because, *inter alia*, the funds are payable to a public treasury, and nothing indicated that the assessment was intended as a charge for labor or services. *Youngblood*, 365 Ill. App. 3d at 214. The court went on to note that the State argued that the assessment should be construed as a fee because it was " 'unrelated to the relative infamy of the defendant's behavior.' " *Youngblood*, 365 Ill. App. 3d at 214. The court dispensed with this argument by simply noting that the assessment *did* vary with the seriousness of the defendant's conduct. *Youngblood*, 365 Ill. App. 3d at 214-15, citing 720 ILCS 570/411.2 (West 2002). *Youngblood* does not stand for the proposition that a charge *must* vary with the severity of conduct in order to constitute a fine, and we decline to create any such rule. In this case, despite the fact that the charge does not vary with severity of behavior, the other attributes of the charge convince us that it is properly characterized as a fine, not a fee. Accordingly, the $5 charge may properly be viewed as a criminal penalty.[3]

_____

[3]This determination serves to distinguish all of the appellate court cases holding that section 5–9–1.1(c) violates due process. Of all of these decisions, only the seminal case, *Rodriguez*, even purported to address the State's argument that the charge was a fine, rather than a fee. However, as noted in the text, *Rodriguez* did not consider the essential character of the charge. See *Rodriguez*, 362 Ill. App. 3d at 51-52. Notably, *Rodriguez* drew a dissent on this precise point. See *Rodriguez*, 362 Ill. App. 3d at 54-55 (Quinn, P.J., dissenting). None of *Rodriguez*'s progeny even attempted to perform any analysis of their own of the fee/fine distinction; every case simply deferred to the *Rodriguez* majority. See *People v. Gorosteata*, No.

B. Due Process

Defendant argues that even viewed as a criminal penalty, the $5 charge still violates his due process rights. It is true that even criminal penalties must comport with due process. *People v. Upton*, 114 Ill. 2d 362, 373 (1986). However, it is well established that the legislature has broad authority to determine the nature and extent of criminal penalties. Courts will not interfere with the legislature's determinations in this regard unless a challenged penalty clearly exceeds what is permitted by the "very broad and general constitutional limitations applicable." *People ex rel. Carey v. Bentivenga*, 83 Ill. 2d 537, 542 (1981).

There can be no serious argument that a $5 fine is so disproportionate to the offense of possession of a controlled substance as to violate defendant's substantive due process rights, and defendant does not so argue. Rather, he argues that it violates his due process rights that this portion of his fine is designated specifically for deposit in the Spinal Cord Injury Paralysis Cure Research Trust Fund. We reject this argument. A defendant has no basis for protesting the usage to which his criminal fines are put. The sole inquiry is whether the amount of the fine is excessive when compared to the criminal conduct in which the defendant is found to have engaged. So far as the propriety of inflicting a pecuniary punishment on a defendant is concerned, it makes no difference whether the fines are designated for deposit in the Spinal Cord Injury Paralysis Cure Research Trust Fund or the general state treasury. As our appellate court has noted,

> "We are unaware of a decision of a court of review in which the fact that the proceeds from a fine or penalty is earmarked for a particular fund serving a governmental purpose has affected the validity of the fine or penalty. *** No case has been called to our attention in which as here, *** fines or penalties are earmarked for a fund and a particular relationship has been required to exist between the offense for which the fine is imposed and the use to be made of the fund." *People v. Wilson*, 144 Ill. App. 3d 290, 295 (1986).

---

1–04–2469 (September 29, 2006); *Morrison*, 367 Ill. App. 3d 581; *Blakney*, 366 Ill. App. 3d 925; *Jones*, 366 Ill. App. 3d at 670; *McNeal*, 364 Ill. App. 3d at 875.

Indeed, if due process required that fines only go to purposes related to the particular crime committed by the defendant who incurred the fine, *all* fines might be called into question. Section 27.6(a) of the Clerks of Courts Act, with very few exceptions, guides the disbursement of all fines collected (among numerous other charges), and clearly not all moneys collected are directed to purposes specifically related to the crimes that individual defendants have committed. For instance, section 27.6(a) directs that a portion of all fines go to the Violent Crime Victims Assistance Fund, another portion to the Traffic and Criminal Conviction Surcharge Fund, another portion to the Drivers Education Fund, and still another portion is directed for deposit into the Trauma Center Fund. 705 ILCS 105/27.6(a) (West 2004). Given the wide variety of ends to which those moneys are directed, it is difficult to conceive of *any* crime with respect to which the fines might be upheld were defendants permitted to contest their fines on the basis that they went to purposes unrelated to their particular crime.

Defendant contends that our decision in *Lindner* did strike down a criminal penalty because the end served by the punishment was insufficiently related to the crime. We disagree with this reading of *Lindner*. There, we struck down on due process grounds a section of the Illinois Vehicle Code which provided for automatic revocation of the driver's licenses of convicted sex offenders. Initially we determined that the purpose of the revocation statute was the "safe and legal operation and ownership of motor vehicles," based on explicit statutory language to that effect in the Vehicle Code. See *Lindner*, 127 Ill. 2d at 182. We found that the revocation in question bore no rational relationship to that interest, because the crime of which the defendant was convicted neither involved a motor vehicle nor bore any rational relationship to his ability to drive a motor vehicle safely. *Lindner*, 127 Ill. 2d at 182-83.

We went on to consider the State's arguments as to alternate purposes the statute might serve. The first purpose suggested by the State was punishment. We assumed, *arguendo*, that the license revocation constituted punishment but stated that, even so,

> "We fail to see, however, how identifying the purpose as punishment cures the constitutional infirmity. The revocation of defendant's license would then be an additional penalty for a criminal offense, and the same rational-basis test would

-27-

apply. [Citations.] *The penalty of license revocation bears no relationship to the offense*. Moreover, if punishment is the purpose, the statute is arbitrary for the same reason we identified earlier. There is no rational basis for choosing the particular offenses in section 6–205(b)(2), as opposed to other offenses not involving a vehicle, to receive the punishment of revocation. If the legislature may punish these offenses with revocation, nothing prohibits it from imposing that penalty for violating any provision of the Criminal Code, a result that would be plainly irrational." (Emphasis added and omitted.) *Lindner*, 127 Ill. 2d at 184-85.

Our decision in *Lindner* does not support defendant's argument–quite the opposite. Defendant argues that even if the charge is a fine, we must evaluate whether *spinal cord paralysis research* bears a rational relation to drug possession–the crime of which he was convicted. But we did not engage in this analysis in *Lindner*. There, once we assumed for purposes of analysis that license revocation was punishment, we did not address whether *safe roads* were related to sexual assault, the crime there at issue. Rather, we considered whether it was rational to inflict the *punishment of license revocation* for the offense of sexual assault. We did not look *beyond* the punishment inflicted to any other purpose that punishment might serve. Thus, *Lindner* would dictate that in this case, once having determined that the charge at issue was a punishment, we consider only whether it is rational to impose the *punishment of a $5 fine* for the offense of drug possession. The answer is clearly yes. *Lindner* does not support looking *beyond* the fine to whatever other purpose the fine might serve, *i.e.*, spinal cord injury paralysis research. Nor does the last above-quoted sentence from *Lindner* suggest a different result, as it could not be considered "plainly irrational" for the legislature to choose to add a $5 fine to all provisions of the Criminal Code.

Our decision in *Crocker*, 99 Ill. 2d 444, noted above, also does not support defendant's position. The case is distinguishable. There, the charge at issue constituted a litigation tax on matrimonial litigants. Here, by contrast, the charge is a fine imposed as punishment for a criminal conviction. The analysis in *Crocker* is inapposite to the present case.

The $5 charge imposed by section 5–9–1.1(c) of the Unified Code of Corrections, although labeled a "fee," is in fact in the nature of the

fine. Thus, its purpose is punitive. Accordingly, the fact that the proceeds of that fine are earmarked for a specific purpose is irrelevant to its constitutionality. So far as the defendant who is subject to a monetary fine is concerned, due process requires only that the punishment imposed be rationally related to the offense on which he is being sentenced. In the context of fines, the inquiry is whether the amount of the fine is grossly disproportionate to the offense. In this case, that test is clearly satisfied. Accordingly, the judgment of the appellate court on this issue is reversed. All other judgments of the appellate court which have held this statute invalid are hereby overruled on this point.

Because we find the charge constitutional on this basis, we need not address the State's alternate argument that there is a rational relation between simple drug possession and spinal cord injury paralysis research.

## CONCLUSION

For the reasons above stated, we affirm in part and reverse in part the judgment of the appellate court. We reverse the appellate court's determination that section 5–9–1.1(c) of the Unified Code of Corrections (730 ILCS 5/5–9–1.1(c) (West 2004)) violates due process. However, we affirm the appellate court's determination that the Traffic and Criminal Conviction Surcharge (730 ILCS 5/5–9–1(c–9) (West 2004)), the "drug assessment" (720 ILCS 570/411.2(a)(4) (West 2004)), and the Trauma Fund charge (730 ILCS 5/5–9–1(b) (West 2004)) are subject to offset for presentencing incarceration credit. Accordingly, we conclude that defendant is entitled to a credit of $604.

*Appellate court affirmed in part*
*and reversed in part.*